# 95 DTA 31

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

SUCESION DE RAMON GRAU,
COMPUESTA POR SU VIUDA ENCARNACION TIRADO
Y SUS HIJAS MILAGROS MARIA GRAU
TIRADO Y MARIA JOSEFA GRAU TIRADO
Demandantes-Recurridas

v.

EL TRIGAL COURT I ASSOCIATES, S.E.
Demandada

ROIG COMMERCIAL BANK
Interventor-Peticionario

Núm. KL1-95-00018

San Juan, Puerto Rico, a 21 de marzo de 1995

Panel integrado por su presidente, Juez Rossy García,
y los Jueces Alfonso de Cumpiano y Negrón Soto

Rossy García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurso instado en el caso de epígrafe interesa la revisión de una Orden emitida y notificada el 13 de febrero de 1995 por el Tribunal Superior, Sala de San Juan. Mediante ésta el tribunal de instancia declaró *"No ha lugar"* tanto la *"Moción Urgente Solicitando Se Deje sin Efecto Orden de Lanzamiento",* ▇ así como la *"Moción de Consignación",* presentadas por el interventor-peticionario, Roig Commercial Bank. Luego de un cuidadoso análisis del recurso instado a la luz de la totalidad de los documentos que obran en autos y el derecho aplicable, resolvemos que resulta procedente denegar la expedición del auto solicitado.

Para colocar las controversias de derecho a que se contrae el presente recurso en correcta perspectiva, veamos el trámite procesal que dio base a la resolución recurrida y los hechos pertinentes a las normas de derecho que sirven de fundamento para nuestro dictamen.

### I

Mediante la escritura núm. 12 otorgada el 22 de septiembre de 1979 ante el notario Virgilio Méndez Cuesta, la parte recurrida cedió en arrendamiento dos solares de su propiedad a Land Lease and Development Corp. por un término de veinticinco (25) años a partir del 30 de noviembre de 1979. Conforme a lo convenido se estipuló un canon de arrendamiento mensual de $1,250.00 por los primeros cinco años (hasta 30 de noviembre de 1984); $1,600.00 mensuales por los próximos cinco años (hasta 30 de noviembre de 1989); $2,000.00 mensuales por los cinco años siguientes (hasta 30 noviembre de 1994); $2,300.00 mensuales por los próximos cinco años (hasta 30 de noviembre de 1999); y $3,000.00 mensuales por el último lustro (hasta 30 de noviembre del 2004)▇ Como parte del contrato los arrendadores, aquí recurridos, autorizaron el subarrendamiento de la propiedad condicionado a la obtención de la aprobación de éstos, estipulándose que tal autorización no podría ser negada irrazonablemente. Dicha escritura fue debidamente presentada e inscrita en el Registro de la Propiedad.

El 28 de diciembre de 1987 Land Lease and Development Corporation cedió el contrato

de arrendamiento a El Trigal Investment, Inc., mediando el consentimiento de las recurridas. Así las cosas, el 31 de mayo de 1988, dicha subarrendataria y los recurridos otorgaron un contrato mediante el cual convinieron extender por ocho (8) años el término de vencimiento del contrato de arrendamiento original. Para dicho período adicional las partes acordaron un canon de arrendamiento por la suma de $5,000.00 mensuales por los primeros cinco años y de $6,000.00 mensuales por los restantes tres. Las demás cláusulas y condiciones del contrato de arrendamiento otorgado el 22 de septiembre de 1979 quedaron inalteradas.

Tras haberse convenido la extensión del término del contrato de arrendamiento, El Trigal Investment, Inc., cedió el contrato de arrendamiento a El Trigal Court I Limited Partnership, S.E., con la autorización de las recurridas. La nueva cesionaria a su vez lo cedió el 29 de diciembre de 1988 a la demandada en el caso de epígrafe, El Trigal Court I Associates, S.E. ■ Con este trasfondo el 6 de julio de 1989 las aquí recurridas, así como Land Lease and Development Corporation, El Trigal Investment, Inc., El Trigal Court I Limited Partnership, S.E. y el Trigal Court I Associates, S.E., comparecieron ante la notario Teresa García Dávila para elevar a escritura pública los acuerdos de cesión y las modificaciones al arrendamiento relativas a la extensión del contrato y monto del canon, antes mencionadas. Otorgaron con tal propósito la escritura número 8 de 6 de julio de 1989 sobre ratificación de cesión y modificación de arrendamiento, ante dicha notario. Se desprende también de los autos que dicho arrendamiento fue gravado mediante hipoteca en garantía de dos pagarés a favor del Roig Commercial Bank mediante escritura número 70 otorgada el 7 de julio de 1989 ante el notario Sergio E. Ramírez de Arellano, la que fue inscrita en el Registro de la Propiedad.■

El 11 de octubre de 1994 los recurridos instaron acción de desahucio por falta de pago de cánones de arrendamiento estipulados en el contrato de arrendamiento, contra El Trigal Court I Associates, S.E.,■ acción que culminó mediante sentencia emitida por el tribunal recurrido el 17 de noviembre de 1994, declarando con lugar la demanda y ordenando el desalojo de la propiedad.■ Dicha sentencia fue archivada en autos y notificada el 28 de noviembre de 1994.

Emitida como fue la sentencia en el pleito de desahucio según indicado, los recurridos procedieron a presentar el 30 de enero de 1995 una demanda en cobro de dinero por los cánones de arrendamiento adeudados contra el Trigal Court I Associates, S.E., ante el Tribunal de Distrito, Sala de San Juan. En la misma solicitaron también la rescisión del contrato de arrendamiento, de conformidad con lo dispuesto en el artículo 1446 del Código Civil, 31 L.P.R.A. sec. 4052■

Con este trasfondo y alegando que *"a mediados del mes de enero, el Banco recibió una comunicación de parte de uno de los inquilinos informándole que los dueños del solar ...pretendían gestionar su desalojo debido a que el Trigal no estaba pagando los cánones de arrendamiento pactados"*, el peticionario instó demanda de intervención en el caso sobre cobro de dinero y rescisión de contrato interpuesto por los recurridos, Civil Núm. 95-969 (501). En la misma y en lo que resulta pertinente el Roig Comercial Bank alegó que era tenedor de una primera hipoteca en garantía de dos pagarés constituida sobre los derechos que como cesionario tiene El Trigal Court I Associates, S.E. en relación con un contrato de arrendamiento, y que al enterarse del incumplimiento contractual por parte de su deudor hipotecario *"se comunicó con [los recurridos] y [les] expresó estar dispuesto a pagarle todo lo adeudado por el Trigal hasta ese momento y proteger de tal forma su garantía hipotecaria"*, ■ oferta que fue rechazada.■ En la misma fecha, 6 de febrero de 1995, presentó moción de consignación en la que alegó ser acreedor hipotecario en relación con el contrato cuya resolución se solicita por los aquí recurridos, y que *"[según] surge de la demanda de intervención que el Banco ha ofrecido a la demandante pagarle todos los cánones adeudados...así como los honorarios de abogado a razón del 10% de lo adeudado, pero dicha parte se ha negado irrazonablemente a recibir dicho pago."* ■ Procedió así a consignar la suma total de $20,355.00 por concepto de los cánones de arrendamiento

adeudados desde agosto de 1994 hasta febrero de 1995 ($15,800.00); las contribuciones adeudadas sobre la propiedad ($2,705.00); más honorarios de abogado adeudados ($1,850.00).

Por separado el peticionario presentó el 8 de febrero de 1995 *"Moción Urgente Solicitando se Deje sin Efecto Orden de Lanzamiento"* en el caso que nos ocupa sobre desahucio en el que ya había recaído sentencia que era final y firme declarando con lugar dicha demanda. En la misma solicitó un pronunciamiento del tribunal dejando sin efecto dicha sentencia por no haber sido incluido como parte en dicho procedimiento, así como la orden emitida posteriormente disponiendo el desalojo de la propiedad. Invocó en apoyo de lo solicitado su alegado derecho como acreedor hipotecario sobre el contrato de arrendamiento, y su ofrecimiento de pago y posterior consignación dentro del trámite procesal del caso radicado sobre cobro de dinero y rescisión de contrato.También presentó al día siguiente en el caso de desahucio *"Moción de Consignación",* la segunda presentada por el peticionario, ésta en apoyo a la solicitud para que se dejara sin efecto la sentencia y posterior orden de lanzamiento, la que fundamentó en su ofrecimiento de pago por concepto de los cánones adeudados y la negativa de los recurridos de aceptar el mismoConsideradas como fueron las mociones presentadas por el peticionario dentro del trámite procesal de la acción de desahucio, las mismas fueron declaradas *"No Ha Lugar",* dictamen que es ahora objeto del recurso que nos ocupa y en el que el peticionario imputa la comisión de los siguientes errores:

*"1. Erró el Tribunal recurrido al no permitir la consignación de los fondos adeudados y al no dejar sin efecto la orden de lanzamiento.*

*2. Erró el Tribunal recurrido al actuar en contra de los términos de su propia orden de lanzamiento.*

*3. Erró el Tribunal al dictar sentencia sin haberse citado o notificado del proceso de desahucio a una parte indispensable.*

*4. Erró el Tribunal al no proteger el derecho de subrogación que le reconoce la Ley Hipotecaria al Banco peticionario como acreedor hipotecario sobre el contrato de arrendamiento inscrito en el Registro de la Propiedad".*

En atención al recurso instado, el 23 de febrero de 1995 emitimos resolución sobre mostración de causa intimando el curso decisional que hoy seguimos. En atención a lo ordenado compareció el peticionario mediante escrito que no nos persuade. Resolvemos que el ofrecimiento de pago y la consignación efectuada por el Banco peticionario no tiene el efecto legal y alcance por él pretendido y que no incidió el tribunal al declarar sin lugar las mociones por él presentadas dentro del trámite procesal de la acción de desahucio.

## II

Debemos iniciar por señalar que ninguna duda debe existir en cuanto a que el peticionario tiene un interés económico en la vigencia del contrato de arrendamiento inscrito, en la medida que dicho contrato constituye la garantía real de su crédito. Al fin y al cabo, la vigencia de su derecho real de garantía (la hipoteca) depende de la vigencia y continuidad de la relación jurídica entre los recurridos y la parte demandada (el arrendamiento).Ahora bien, debemos aquí preguntarnos si la mera existencia de dicho interés económico, convierte *ipso facto* al peticionario en una parte indispensable en la acción de desahucio instada por los recurridos, ello a la luz de las circunstancias particulares del presente caso y del derecho aplicable.

Para atender esta interrogante, debemos partir de la premisa que la acumulación

compulsoria de partes en acciones que envuelven derechos reales depende de dos factores: (1) la naturaleza del interés jurídico que invocan los litigantes en relación con la propiedad; y (2) el tipo de reclamación o remedio solicitado. Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d, §1621, págs. 302-303. (Traducción nuestra). Debemos también tener presente que la existencia *per se* de la hipoteca sobre el contrato de arrendamiento no convierte al acreedor hipotecario en parte en dicho contrato ni le confiere un derecho automático de intervenir en un pleito relacionado con dicho contrato. Las únicas partes jurídicamente vinculadas, es decir, obligadas a cumplir con las prestaciones que surgen al amparo del contrato de arrendamiento son el arrendador y el arrendatarioEl primero se obliga a transmitirle parcial y temporeramente el goce y uso de una propiedad suya al segundo en consideración del pago de un canon. *Galiñanes Hnos. v. Tribunal Superior,* 77 D.P.R. 881, 886 (1955). Precisamente por tratarse de un contrato que genera obligaciones bilaterales, se ha expresado que:

*"[d]esde el punto de vista de la teoría general de las obligaciones, si cualquiera de las partes incurriere en incumplimiento de sus obligaciones según se enumeran las mismas en el artículo 1444 (obligaciones del arrendador) y 1445 (obligaciones del arrendatario), sería de aplicación el artículo 1077 que da facultad a la otra parte para compeler al cumplimiento específico si éste fuere aún posible o pedir la resolución del contrato por incumplimiento, con abono de daños en ambos casos. Sin embargo, para el contrato de arrendamiento, el Código nos provee una regla especial en el artículo 1446, 31 L.P.R.A. 4053, que dispone que si el arrendador o el arrendatario no cumplen las obligaciones expresadas en los artículos 1444 y 1445, la otra parte podrá pedir la rescisión (entiéndase resolución) del contrato y la indemnización de daños y perjuicios, o sólo éstos, dejando el contrato subsistente".* José Ramón Vélez Torres, *Curso de Derecho Civil:* Derecho de Contratos, Tomo IV, Vol. 2, Rev. Jur. U.I.A., San Juan (1990), pág. 286. Véase además, *Worldwide Food Distributors v. Colón Bermúdez,* **93 J.T.S. 114,** a la pág. 10967.

A la luz de este contexto doctrinal, forzoso resulta concluir que, como regla general, el acreedor hipotecario del derecho arrendaticio no tiene ingerencia en un pleito de desahucio por falta de pago de cánones instado por el arrendador contra el arrendatario (a su vez deudor hipotecario) a menos que justifique su reclamo de intervención en un fundamento independiente que lo convierta en parte indispensable en el litigio. Veamos ahora el alcance del ofrecimiento de pago y posterior consignación efectuada por el peticionario y si el mismo constituye base para la procedencia del remedio por él peticionado.

## III

En el caso de epígrafe el acreedor hipotecario predica su reclamo de intervención como parte en el litigio entre la arrendadora y la arrendataria (deudora hipotecaria) en la facultad subrogatoria que le confiere el artículo 158, inciso (6) de la Ley Hipotecaria. Dicho artículo dispone lo siguiente:

*"Son también hipotecables:*

*........*

*"6to. El derecho de arrendamiento inscrito, a menos que esté impedido el arrendatario de ceder o subarrendar, pero quedando sujeta la hipoteca que se constituya sobre el mismo a la resolución del arrendamiento por causas ajenas a la voluntad del arrendatario. Si la resolución fuere por causas atribuibles a la voluntad del arrendatario el titular de la hipoteca podrá subrogarse en el lugar y grado del mismo en calidad de cesionario bien por convenio entre los interesados o por decisión de un tribunal competente, quien podrá así acordarlo como medida provisional de cautela o en forma definitiva, dentro de los términos del contrato inscrito y en todo caso determinando el tribunal las alteraciones o*

*modificaciones en la deuda original de acuerdo con la equidad del caso."* 30 L.P.R.A. §2554. (Subrayado nuestro).

De una simple lectura de la disposición antes citada surge sin lugar a dudas que, independientemente de que consideremos el arrendamiento inscrito como un derecho real o personal█ la hipoteca constituida sobre el mismo conserva su naturaleza accesoria con respecto al crédito garantido. Por otro lado, sin embargo, lo que nos corresponde en el presente caso es, en vista del efecto adverso que para el acreedor hipotecario podría suponer el desalojo del arrendatario, determinar qué medidas tiene que tomar el acreedor hipotecario para subrogarse en la posición del arrendatario, según lo contempla el artículo 158(6) de la Ley Hipotecaria, para proteger así su derecho real de garantía.

Comenzamos por señalar que, para el caso de resolución de contrato de arrendamiento previsto por la Ley Hipotecaria, bajo la categoría de *"causas atribuibles a la voluntad del deudor"* pueden ubicarse *"todas aquellas actuaciones que darían lugar al desahucio según expuestas en los incisos 2 al 4 del Artículo 1459 del Código Civil, 31 L.P.R.A. §4066, a saber, la falta del pago del canon convenido; infracción de cualquiera de las condiciones estipuladas en el contrato; la destinación de la cosa arrendada a servicios no pactados que la hagan desmerecer, o a usos contrarios a la naturaleza de la cosa".* Michel J. Godreau Robles, *La Hipotecabilidad del Derecho Arrendaticio (Comentarios en Torno al Artículo 158 Inciso 6to. de la Vigente Ley Hipotecaria,* 52 Rev. Jur. U.P.R. 381, 416-417 (1984). En el caso de epígrafe la causa del desahucio fue la falta de pago del canon estipulado y las contribuciones sobre la propiedad. A base de la segunda oración del artículo 158(6), *supra,* el acreedor hipotecario puede proteger su interés económico subrogándose en la posición del arrendatario (deudor hipotecario). El lenguaje de dicha oración sugiere que esta facultad subrogatoria del acreedor hipotecario no opera *ex lege,* esto es, por imperativo de ley, sino que sólo podría producirse en dos situaciones: (1) por convenio entre los interesados (entiéndase arrendador y acreedor hipotecario); ó (2) en ausencia de convenio, por decisión de un tribunal competente.

Ahora bien, ¿cuál es el alcance y naturaleza de la facultad subrogatoria que el artículo objeto de análisis confiere al acreedor hipotecario al decir que *"podrá subrogarse en el lugar y grado del [arrendatario] en calidad de cesionario"*?

Sobre este particular el Profesor Michel Godreau ha expresado que

*"aunque la ley hable de subrogación , no se trata de la sustitución de partes a la que generalmente se refiere este término de acuerdo a los Artículos 1112 y 1164 del Código [Civil, 31 L.P.R.A. §§3162 y 3148]. Estos artículos se refieren a la subrogación que faculta a un tercero a reclamar unos derechos incluso sin tener que contar con el consentimiento del acreedor. Dicha subrogación no concede empero la potestad de sustituir al deudor. Es decir, cuando un tercero con interés en el cumplimiento de la obligación le paga al acreedor, el Código le permite colocarse en la posición de éste para reclamarle al deudor. Así, un tercero que pague la deuda de un arrendatario tendría derecho a colocarse en la posición del arrendador para reclamar del arrendatario el reembolso de lo pagado. Por el contrario la subrogación que concede el Artículo 158(6) le permite al tercero con interés ubicarse ahora como deudor, sustituyendo al arrendatario. Sin duda se habrá subrogado también como acreedor, ya que en la medida en que el arrendamiento es una obligación bilateral también es acreedor el arrendatario; pero esta subrogación del Art. 158(6) lo convierte en acreedor de aquél a quien él le hizo el pago. Por ello es que afirmamos que no se trata en realidad de una subrogación, sino de una sustitución del arrendatario-deudor, no solamente en relación con la acreencia que éste pudiera tener frente al arrendador, sino como sujeto personalmente obligado, es decir con referencia a las obligaciones. Por ello es que el artículo habla, con entera corrección jurídica en esta parte de la segunda oración, de que el titular de la*

*hipoteca se subrogará "en calidad de cesionario", es decir, como sustituto tanto de los derechos como de las obligaciones."* Godreau Robles, *supra*, págs. 417-418.

A la luz de estas acertadas expresiones, forzoso resulta concluir que en ausencia de convenio entre el arrendador y el acreedor hipotecario, es necesario un pronunciamiento declaratorio del tribunal competente relativo al derecho de subrogación del acreedor hipotecario como *"cesionario"* del arrendatario. Así pues, el tribunal podrá decretar la subrogación *"como medida provisional de cautela o en forma definitiva, dentro de los términos del contrato inscrito y en todo caso determinando el tribunal las alteraciones o modificaciones en la deuda original de acuerdo con la equidad del caso"*, según lo dispone el propio artículo 158(6).

Desde luego, para que el tribunal competente pueda llegar a tal determinación en ausencia de convenio entre los interesados, el acreedor hipotecario tiene que colocar al foro competente en condición de emitir tal dictamen mediante una solicitud **clara y sin ambages** a tales efectos, de modo que el tribunal pueda decretar la subrogación (novación subjetiva pasiva) contemplada por la Ley Hipotecaria. A su vez, el contenido y la súplica de dicha solicitud será el fundamento independiente en que el acreedor hipotecario podría predicar su reclamo de intervención como parte indispensable dentro del trámite procesal de la acción de desahucio, así como con aquella de resolución de contrato promovido por el arrendador contra el arrendatario (deudor hipotecario).

Veamos ahora la situación particular del caso ante nos a la luz de los principios de derecho antes reseñados para determinar si la moción presentada y la consignación efectuada por el banco recurrente equivale a la solicitud clara y sin ambages que le hubiese permitido al tribunal competente decretar la subrogación del acreedor hipotecario *"en el lugar y grado del [arrendatario] en calidad de cesionario del [mismo], esto es, como sustituto tanto de los derechos como de las obligaciones"*.

## IV

Surge de los autos que al advenir el acreedor hipotecario en conocimiento de la acción resolutoria de contrato promovida por la arrendadora contra la arrendataria, y ante el riesgo que dicha acción representaba para su garantía crediticia, el acreedor hipotecario radicó, junto con la *"Demanda de Intervención"*, una *"Moción de Consignación"* el 6 de febrero de 1995. Mediante dicha moción la parte recurrente se limitó a depositar la suma global de $20,355.00, correspondiente a cánones de arrendamiento adeudados desde agosto de 1994 hasta febrero de 1995 ($15,800.00); la suma de $2,705.00 adeudados por concepto de contribuciones sobre la propiedad; y $1,850.00 por concepto de honorarios de abogado adeudados en el caso de desahucio. Ni siquiera la interpretación más liberal de los términos de la referida moción nos permitiría derivar una intención del peticionario de subrogarse en la posición de la arrendataria (deudora hipotecaria). En este sentido, el mecanismo de la consignación no puede tener el alcance pretendido por el banco recurrente.Concluir lo contrario produciría el resultado absurdo de ofrecerle al acreedor hipotecario la extraordinaria protección del art. 158(6) de la Ley Hipotecaria sin que éste asuma la responsabilidad que, a su vez, dicha protección conlleva.

## V

Recapitulando, concluimos que en modo alguno la mera consignación de las sumas adeudadas por concepto de cánones adeudados por el arrendatario implica que el acreedor hipotecario se convierte en *"cesionario"* del arrendatario. Por consiguiente, surge con meridiana claridad que en este limitado sentido el acreedor hipotecario no es parte indispensable en la acción de desahucio instada por el arrendador contra el arrendatario. Distinto sería el caso si el banco peticionario hubiese peticionado oportuna y adecuadamente al tribunal de instancia que se reconociera su derecho de subrogación al amparo del artículo

158(6) de la Ley Hipotecaria, lo que lo hubiera convertido en sustituto o *"cesionario"* del arrendatario, es decir, en beneficiario de sus derechos y responsable de sus obligaciones. En consecuencia, el peticionario no descargó su obligación de poner al tribunal recurrido en condición de hacer tal pronunciamiento. Mucho menos lo ha hecho ante nosotros, por lo que resulta procedente la denegación del auto solicitado.

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Lo acuerda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 95 DTA 31

**1.** En la Moción Urgente el peticionario solicitó un pronunciamiento que dejara sin efecto la sentencia emitida por el tribunal recurrido el 17 de noviembre de 1994, mediante la cual declaró con lugar la demanda de desahucio, así como la orden de lanzamiento emitida posteriormente.

**2.** Véase Contrato de Arrendamiento, Apéndice del Recurso de *Certiorari*, págs. 33 a 43.

**3.** Véase Estudio de Título, Apéndice del Recurso de Revisión, págs. 17 y 18.

**4.** *Id.*, págs. 17, 18 y 20.

**5.** Véase Demanda, Apéndice del Recurso de *Certiorari*, págs. 1-3.

**6.** Véase Sentencia, Apéndice del Recurso de *Certiorari*, págs. 5-6.

**7.** El mismo reza: *"Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en las secciones anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente."* 31 L.P.R.A. sec. 4053.

**8.** Véase alegación 5 de la Demanda de Intervención, Apéndice del Recurso de *Certiorari*, pág. 9.

**9.** Véase Demanda de Intervención, Apéndice del Recurso de Revisión, págs. 8 y 9.

**10.** Véase Moción de Consignación, Apéndice del Recurso de *Certiorari*, págs. 11 a 13.

**11.** Véase Cheque de Gerente Núm. 43211, Apéndice del Recurso de *Certiorari*, pág. 13.

**12.** Véase Apéndice del Recurso de *Certiorari*, págs. 14 a 16.

**13.** Véase Apéndice del Recurso de *Certiorari*, págs. 23 y 24.

**14.** Al igual que en España, en nuestro sistema *"la hipoteca es un derecho accesorio del crédito asegurado; aquélla nace y muere con ésta. Rige el criterio romano de la accesoriedad de la hipoteca en relación al [sic] crédito garantido, de modo que aquélla subsiste mientras subsiste éste (y no viceversa), lo que atribuye al crédito la cualidad de elemento principal de la relación jurídica. La hipoteca no es un derecho independiente, o sea con existencia propia, sino que vive al servicio de un crédito; [...e]stá íntimamente ligada y subordinada, en su existencia, extensión y extinción, con el crédito. Por tanto, la hipoteca es un derecho conectado al crédito y que persigue su suerte."* Ramón M. Roca Sastre, *Derecho Hipotecario*, 6ta. ed., Tomo IV, Volumen 1, Bosch, Barcelona (1968), pág. 190.

**15.** El artículo 1433 del Código Civil de Puerto Rico dispone: *"En el arrendamiento de cosas, una de las partes se obliga a darle a la otra el goce o uso de una cosa por tiempo determinado y precio cierto."* 31 L.P.R.A. 54012.

**16.** El debate doctrinal sobre la hipotecabilidad del derecho arrendaticio gira principalmente en torno al efecto que tiene la inscripción del arrendamiento en el Registro de la Propiedad, es decir, si le confiere al mismo carácter de derecho real o si, por el contrario, permanece inalterada su naturaleza de derecho personal. Véase, sobre el particular, J. Vallet de Goytisolo, *Hipoteca del Derecho Arrendaticio Especialmente de Empresas y Locales de Negocio,* Editorial Revista de Derecho Privado, Madrid (1951), págs. 115-136; G. Arango, *"Hipoteca de Arrendamiento de Inmuebles",* Revista Crítica de Derecho Inmobiliario (1952), págs. 557-566.

**17.** Véase Godreau Robles, *supra,* pág. 419.

**18.** El 1 de marzo de 1995 el recurrente compareció nuevamente mediante demanda de consignación, depositando la suma de $2,300.00 correspondiente al canon de arrendamiento del mes de marzo, en tanto disponíamos del presente recurso.

**19.** A lo sumo, el ofrecimiento de pago y posterior consignación alcanza al ofrecimiento de pago por tercero contemplado por el artículo 1112 del Código Civil, 31 L.P.R.A. §3162 y no a una solicitud de subrogación o sustitución absoluta del acreedor hipotecario en la posición del arrendatario.

**20.** Significativo nos resulta que la consignación efectuada por el peticionario y que fue declarada *"No Ha Lugar",* fue a los efectos limitados de pagar las sumas adeudadas por el Trigal a los recurridos, para a base de ello peticionar que se dejara sin efecto la orden de lanzamiento. (Véase Moción de Consignación, Apéndice del Recurso de *Certiorari,* págs. 23 y 24.

**21.** No pasamos juicio sobre la controversia planteada en la demanda en cobro de dinero y rescisión de contrato, Civil Núm. 95-969 (501) del Tribunal de Primera Instancia, Sala de San Juan, en donde el Banco peticionario presentó una moción de intervención, la cual no fue resuelta, y los demandantes recurridos solicitaron el retiro de los fondos consignados y el desistimiento voluntario del pleito, los que aparentemente fueron resueltos por dicho foro sin participación de dicho Banco.